**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

**No. 03-4489**

---

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

NATHANIEL JONES, III,

Defendant - Appellant.

---

Appeal from the United States District Court for the Middle District of North Carolina, at Durham. Frank W. Bullock, Jr., District Judge. (CR-02-155)

---

Argued: March 17, 2006                    Decided: May 16, 2006

---

Before GREGORY and DUNCAN, Circuit Judges, and HAMILTON, Senior Circuit Judge.

---

Vacated and remanded by unpublished opinion. Judge Gregory wrote the majority opinion, in which Judge Duncan joined. Senior Judge Hamilton wrote a separate opinion concurring in the judgment in part and dissenting in part.

---

**ARGUED:** Lisa S. Costner, Winston-Salem, North Carolina, for Appellant. Lawrence Patrick Auld, OFFICE OF THE UNITED STATES ATTORNEY, Greensboro, North Carolina, for Appellee. **ON BRIEF:** Anna Mills Wagoner, United States Attorney, Paul A. Weinman, Assistant United States Attorney, Greensboro, North Carolina, for Appellee.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

GREGORY, Circuit Judge:

Nathaniel Jones, III pleaded guilty to the use of a firearm during carjacking, in violation of 18 U.S.C. § 924(1)(A)(ii) & (2), and armed bank robbery, in violation of 18 U.S.C. § 2113(d). On appeal, Jones asserts that the district court committed plain error under United States v. Booker, 543 U.S. 220 (2005), by imposing three sentencing enhancements related to the armed bank robbery charge. Because we find that the sentence violated the Sixth Amendment based on the third enhancement for obstruction of justice, we vacate and remand for resentencing.

I.

Jones and his co-defendant, Carlos Antonio Williams, were charged by a grand jury in a second superseding indictment, which asserted six counts related to carjacking and bank robbery. Jones entered into a plea agreement only with respect to Count Three, which alleged that defendants used and carried a firearm in relation to carjacking, and Count Five, which alleged that defendants committed armed bank robbery. The government also submitted a factual basis in support of the plea, which detailed the carjacking and armed bank robbery.

According to the factual basis, Jones met with Komikka Gregory, Rashime Gardner, and Williams on August 20, 2000, to discuss plans to rob a bank. After deciding on a particular branch

3

of Bank of America, Jones gave Gregory the keys to his rental truck and told the others to steal a car to use in the robbery. Gregory, Gardner, and Williams subsequently drove around and approached a woman at a car wash. Gardner directed the woman to exit her car, and Williams brandished a gun. After the woman got out of the car, Gardner and Williams drove the car to an area near the designated bank. Gregory, Gardner, and Williams then drove Jones's truck to Jones's residence.

The factual basis further asserted that the next morning, Gregory, Gardner, Williams, and Jones drove the truck to where the stolen car had been parked, parked the truck, and drove the stolen car to the bank. At that point, Jones, Gardner, and Williams entered the bank, with Jones and Williams each armed with handguns. Williams "jumped over the teller counter and brandished his handgun at the tellers." J.A. 36. Gardner took money from several tellers. When two customers entered the bank, Jones brandished his handgun and ordered them to the floor. Upon exiting the bank, the three men got into the stolen car, which was being driven by Gregory, and drove to where the truck had been parked. The four abandoned the stolen car and drove the truck to Jones's residence, where they split $5,901 in robbery proceeds.

At the plea hearing, the district court discussed the proffered factual basis with the parties. At that time, Jones's counsel objected to a portion of the factual basis that provided

4

that Jones "told" the others to steal a car to use in the robbery. J.A. 34. Counsel argued that "there was no express telling, but the general factual basis is correct." J.A. 59. When the district court asked whether "generally you and Mr. Jones are in agreement with the factual basis," Jones's counsel replied "Yes, sir, Your Honor." Id.

The probation office subsequently prepared a presentence investigation report ("PSR") applying the 2002 edition of the United States Sentencing Guidelines ("Guidelines"). With respect to the armed bank robbery charge in Count Five, the PSR calculated a base offense level of twenty under § 2B3.1.[1] The PSR added (1) a two-level enhancement for stealing property from a financial institution under § 2B3.1(b)(1); (2) a six-level enhancement for using a firearm under § 2B3.1(b)(2)(B); and (3) a two-level enhancement because the armed bank robbery involved carjacking under § 2B3.1(b)(5). The PSR further recommended a two-level enhancement for obstruction of justice pursuant to § 3C1.1 based on an intercepted letter Jones had apparently written to Gardner, who was then an inmate at Rowan Correctional Center, urging him to

---

[1]The PSR calculated a Guidelines range only for Count Five, because the Guidelines sentence for Count Three was determined by statute. J.A. 124; § 2K2.4 (stating that the Guidelines sentence for violating 18 U.S.C. § 924(c) is "the minimum term of imprisonment required by the statute"). The relevant criminal statute, 18 U.S.C. § 924(c)(1), requires a minimum sentence of seven years, to run consecutively with any other term of imprisonment.

"tell the police me and Carlos didn't have anything to do with it" or to "say nothing." J.A. 123. Ultimately, with a total offense level of thirty-two and a criminal history category of I, the PSR recommended a Guidelines range of 121 to 151 months' imprisonment for Count Five. J.A. 132. Jones did not file any objections to the PSR.

At the joint sentencing hearing for Jones and Williams, Williams's counsel first asserted that "[o]ur objection was not to any of the factual content of the presentence report, but rather was to the guideline application" regarding the enhancement for using a firearm during the robbery under § 2B3.1(b)(2)(B). J.A. 71. In addition, Williams's counsel stated that "I did not understand from the government's response that the government had any objection to the facts as set forth in the presentence report." Id. Although Jones had not raised a similar objection, the district court announced that it would consider the issue with respect to both Williams and Jones.

Immediately before the government began to present its evidence, Williams's counsel objected to "the government presenting evidence that will contradict any aspect of the facts set out in the presentence report without having time to file an objection to them." J.A. 74. Jones's counsel joined this objection. J.A. 75. After the district court acknowledged these objections, the government presented its evidence.

6

After hearing evidence regarding the circumstances of the actual bank robbery, the district court determined that Williams and Jones had brandished, and not used (which carried a higher enhancement), a firearm during the robbery. Accordingly, the district court adjusted Jones's recommended Guidelines range from a total offense level of thirty-two to thirty-one, thereby yielding a Guidelines range of 108 to 135 months' imprisonment.

When the district court asked Jones's counsel whether there were any other issues, counsel responded, "we have no formal objections filed." J.A. 90. Counsel did, however, request a reduction for acceptance of responsibility. The district court remarked that imposing a departure based on acceptance of responsibility appeared to be inconsistent with Jones's upward enhancement for obstruction of justice. In response, counsel stated, "I believe the letters they were using for the [obstruction of justice] enhancement were done at least at a point in time prior to this matter being brought before the federal judiciary . . . ." J.A. 90-91. The district court nevertheless rejected the proposed reduction for acceptance of responsibility.

The district court thus imposed a sentence of 120 months with respect to Count Five, and a consecutive sentence of 84 months with respect to Count Three. Jones now appeals his sentence.

II.

A.

We review the sentencing errors identified in this appeal for plain error because they were never presented to the district court. United States v. Hughes, 401 F.3d 540, 547 (4th Cir. 2005) (citing Fed. R. Crim. P. 52(b); United States v. Olano, 507 U.S. 725, 731-32 (1993)). To establish plain error, the defendant must "show that an error occurred, that the error was plain, and that the error affected his substantial rights." United States v. White, 405 F.3d 208, 215 (4th Cir.) (citing Olano, 507 U.S. at 732), cert. denied, 125 S. Ct. 668 (2005); United States v. Evans, 405 F.3d 208, 215 (4th Cir. 2005). Assuming that the defendant satisfies this three-part standard, "correction of the error remains within our discretion, which we should not exercise . . . unless the error seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." White, 405 F.3d at 215 (internal quotation marks and citations omitted).

B.

In Booker, the Supreme Court held that a Sixth Amendment violation arises where the district court, acting pursuant to the Sentencing Reform Act and the Guidelines, imposes a sentence that is greater than the maximum authorized by the facts found by the jury. See Booker, 543 U.S. at 244. On appeal, Jones contends that

8

his sentence violates Booker based on three distinct enhancements that increased his Guidelines range: (1) a five-level enhancement for brandishing a firearm under § 2B3.1(b)(2)(C); (2) a two-level enhancement because the bank robbery involved carjacking under § 2B3.1(b)(5); and (3) a two-level enhancement for obstructing justice under § 3C1.1. In response, the government asserts that each of the enhancements is supported either by the guilty plea or the admitted facts.

We easily conclude that Jones admitted the facts supporting the first two enhancements. First, Jones's guilty plea to Count Five, which charged him with using a handgun during the robbery, constituted an admission of the facts underlying the firearm brandishing enhancement. Second, counsel's representation that "the general factual basis is correct," J.A. 59, was the functional equivalent of adopting the factual basis, which set forth the predicate for the carjacking enhancement. See United States v. Buonocore, 416 F.3d 1124, 1134 (10th Cir. 2005) (defense counsel's assertion that the drug quantities set forth in the PSR were "exactly correct" constituted an admission of those quantities for the purposes of sentencing). Accordingly, neither of these enhancements required judicial factfinding in violation of the Sixth Amendment.

The third enhancement for obstruction of justice, however, rested solely on facts contained in the PSR, to which Jones did not

9

file formal objections. During the sentencing hearing, counsel reiterated that "we have no formal objections filed" in declining to object to the PSR, J.A. 90, and also objected to "the government presenting evidence that will contradict any aspect of the facts set out in the presentence report <u>without</u> having time to file an objection to them," J.A. 74 (emphasis added).[2] The issue, therefore, is whether these statements were admissions of the facts contained in the PSR.

In assessing whether a defendant's statement qualifies as an admission for <u>Booker</u> purposes, this Circuit recently recognized that "verbalizations necessarily fall along a spectrum." <u>United States v. Revels</u>, 05-4142, slip-op. at 5 (4th Cir. May 1, 2006). <u>Revels</u> thus explains that statements such as "I admit" settle at one end as clear admissions for the purposes of the Sixth Amendment. <u>Id.</u> At the opposite end of the spectrum is silence. <u>Id.</u> at 6; <u>see</u> <u>United States v. Milam</u>, 2006 WL 871287, at *4 (4th Cir. Apr. 6, 2006) ("To presume, infer, or deem a fact admitted because the defendant has remained silent, however, is contrary to the Sixth Amendment." (internal citations omitted)) (holding that

_____

[2]It was Williams's counsel who actually expressed the objection "to the government presenting evidence that will contradict any aspect of the facts set out in the presentence report without having time to file an objection to them." J.A. 74. However, Jones's counsel explicitly stated, "Your Honor, we would also make that same objection." J.A. 75.

the defendant's silence in failing to object to the PSR did not constitute an admission of the facts contained in the PSR).

Guided by Revels, we conclude that counsel's statement that "we have no formal objections filed" in declining to object to the PSR is closer to silence. See Revels, slip-op. at 6 (holding that the defendant did not admit the facts in the PSR when he declined to object to the PSR by stating "No, sir" and stated an objection under Blakely v. Washington, 542 U.S. 296 (2004)). Indeed, we perceive no material difference between stating "no" and stating "we have no formal objections filed" in response to a district court's queries regarding outstanding objections to the PSR. Id. at 6 n.1 ("To the extent that it is reasonable to hold the defendant here to his 'No, sir,' it would have been no less reasonable to hold the defendant in Milam to his silence. But of course Milam did not so hold.").

Similarly, counsel's subsequent objection to the government's presentation of any surprise evidence contradicting the PSR's findings is far from being an express admission of the facts contained in the PSR. In substance, counsel's statement was a preemptive measure to prevent the government from inserting any eleventh-hour factual allegations without providing Jones with an opportunity to respond. It is significant to note that Jones did not seek to completely preclude the government from presenting new evidence. Rather, counsel merely preserved his right to seek "time

11

to file an objection" to belated allegations if the government chose to present such evidence at the sentencing hearing. J.A. 74 (emphasis added). We therefore decline to construe counsel's objection as an admission of the facts contained in the PSR.

Without any support in the guilty plea, factual basis, or admissions made by Jones, the enhancement for obstruction of justice thus rested solely on judicial factfinding. Accordingly, this enhancement violated the Sixth Amendment. Without this enhancement, Jones would have been subject to a sentencing range of 87 to 108 months' imprisonment for Count Five (and a statutory consecutive term of imprisonment of 84 months for Count Three). Here, however, the district court sentenced Jones to a term of imprisonment of 120 months with respect to Count Five (and a term of imprisonment of 84 months with respect to Count Three). Accordingly, we take judicial notice of the plain error under Hughes, vacate the sentence, and remand for resentencing. Hughes, 401 F.3d at 555-56.

VACATED AND REMANDED

12

HAMILTON, Senior Circuit Judge, concurring in the judgment in part and dissenting in part:

For the reasons stated in the majority opinion, I agree that Jones's challenges to the brandishing and carjacking enhancements lack merit. However, the majority's reasoning behind its decision to vacate the obstruction enhancement is hopelessly flawed and, for this reason, I dissent from the majority's decision to remand for resentencing.

It is undisputed that the PSR sets forth sufficient facts supporting the obstruction of justice enhancement. At sentencing, Jones affirmatively indicated that he had no objections to the factual contents of the PSR. He also objected to the government's presentation of any evidence that would have contradicted "any aspect of the facts set out" in the PSR.

In United States v. Milam, No. 04-4224, 2006 WL 871287 (4th Cir. April 6, 2006), we held that a defendant's failure to object to a PSR's factual findings does not constitute an admission of those facts for purposes of the Sixth Amendment. Id. at *5. To hold otherwise, we concluded, would allow the government to obtain a conviction without proving all of a crime's elements beyond a reasonable doubt. Id.

In United States v. Revels, No. 05-4142 (4th Cir. May 1, 2006), we concluded that the defendant's statement "No, sir" in response to the district court's inquiry as to whether he had any objections to the PSR was not an admission for purposes of the

13

Sixth Amendment.  Slip op. at 5.  In so concluding, we observed that the defendant's case in Revels fell "somewhere in the middle of the spectrum" between Milam's silence and a defendant's statement such as "'I admit.'"  Id. at 4.

In its opinion, the majority concludes that Jones's case is governed by Milam and Revels.  However, this case concerns much more than a simple failure to object as in Milam or a simple "No, sir" as in Revels.  Indeed, if all Jones did was simply remain silent and/or indicate that he had no objections to the PSR's factual findings, then I would agree with the majority that this case is controlled by Milam and Revels.  Critically, though, Jones objected to any actions by the government which would have cast doubt on the factual accuracy of the PSR.  By taking affirmative steps to protect the sanctity of the PSR's factual findings, Jones unquestionably admitted those facts for Booker purposes.

The majority downplays the significance of Jones's objection to the government's presentation of facts that would contradict the PSR's factual findings, essentially describing the objection as a sound trial strategy preventing Jones from being ambushed by the government.  However, Jones's objection cannot be written off so easily.  He objected only to a factual presentation that would have contradicted the factual allegations of the PSR.  By taking the affirmative step to prevent the PSR's facts from being contradicted (as opposed to supplemented), he has gone well beyond the mere "No,

14

sir" that was present in <u>Revels</u>, moving the case from "somewhere in the middle of the spectrum" to the "'I admit'" realm.  <u>Id.</u> at 4-5.

For these reasons, I dissent from the majority's decision to remand for resentencing.